## Commonwealth *v.* Beck, Appellant, et al.

Argued October 3, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Harry A. Estep,* with him *M. Barney Cohen,* for appellant.

*William J. O'Donnell,* Assistant District Attorney, with him *Andrew T. Park,* District Attorney, and *George F. P. Langfitt,* First Assistant District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., November 15, 1939:

In January of the present year Lou Beck, Nathan Beck and Azel Carter were jointly indicted and tried for the crime of setting up and conducting a lottery, familiarly known as the "numbers game." See *Com. v. Banks,* 98 Pa. Superior Ct. 432; *Com. v. Chirico et al.,* 117 Pa. Superior Ct. 199, 205, 177 A. 591.

All three were found guilty; Nathan Beck was granted a new trial and the charge against him subsequently nol. pros'd; Azel Carter was sentenced to three months in the county jail and Lou Beck to eight-

een months in the workhouse; the present appeal is by the latter from that sentence.

In connection with the operation of the same lottery Zefus Ford was separately indicted as the "writer". Prior to the trial of appellant and his codefendants a nol. pros. was entered upon the indictment against him and he became a witness for the Commonwealth.

The contention of the Commonwealth, as indicated by the record, was that Ford, who ostensibly conducted the "Sports Center" store, was the "writer" in the lottery here involved, Azel Carter the "pick-up man", and appellant the "banker". None of the defendants in the joint indictment took the stand. There was sufficient competent evidence, aside from that of Ford, to sustain the conviction of Carter, and we accordingly direct our attention to the case against Lou Beck, the present appellant.

Preliminarily, it may be noted that the prosecutions arose out of the refusal or inability of the "bank" to pay the respective sums of money won by two players, Novell and Delane. By their testimony and that of Genevieve Howard, an employee of Ford, it was shown that each of them "bought" several "number slips" from her, acting as a clerk for Ford, on the evening of June 22, 1938. One of the numbers played by Novell was "032", as his selection of, or bet upon, the digits which would appear in the closing figures of the New York Stock Exchange on the following afternoon. The amount staked by him on this number was 83 cents. At the same time Delane bought several slips; he also played "032" and staked 65 cents upon it. The odds fixed and offered by the persons running the game were 700 to 1. It happened that "032" was the "winning number" disclosed by the figures published on the afternoon of June 23d. As a result the "bank" owed Novell $581 and Delane $455. The duplicate tissue slips had been taken from the store to the "bank" by Carter, the

"pick-up man," but when the "hits" were made by Novell and Delane he failed to bring back their winnings.

There was nothing in the testimony of these witnesses directly connecting appellant with the operation of the lottery. Genevieve Howard testified, "I just know Lou Beck to see him," but never talked to him. Delane said that when he demanded his money from Carter, the latter replied, "Well, I can't do nothing until I see Lou." There was no identification of appellant, by the testimony of this witness, with the "Lou" referred to by Carter. Delane also testified that when he and Carter were discussing the matter at a later date in the Crawford Grill, "Lou Beck was sitting in the front booth."

Up to this point in its case the Commonwealth would not have been justified in asking for the conviction of appellant. It undertook to supply this deficiency by the testimony of Zefus Ford and relied upon the statements of Delane as corroboration thereof.

This witness testified positively that at the solicitation of Lou Beck, and for a consideration paid him by the latter, he agreed to "take Beck's book," i. e., "write the numbers" at his (Ford's) store and "turn all the business into" Beck, through Azel Carter. In brief, if the jury accepted the testimony of Zefus Ford it was ample to sustain the conviction of appellant as the "banker" in the lottery. It is also a fair inference from the record that the Commonwealth procured the testimony of Ford against appellant and Carter by entering a nol. pros. upon the indictment against him. Ford was clearly an accomplice and we have already indicated that in our opinion a verdict against appellant could not have been sustained without the testimony of the accomplice.

Unfortunately, the trial judge in submitting the case to the jury inadvertently failed to direct their attention even to the fact that Ford was an accomplice. By the fourth, fifth and sixth assignments it is charged

that "the court erred in failing to charge" that Ford, under his own testimony, was an accomplice and, therefore, his testimony "should be carefully scrutinized", and in failing to charge with relation "to the nature of the testimony of an accomplice and the weight to be given thereto." These are the only assignments covered by appellant's statement of the questions involved upon this appeal. We have no doubt the omission was entirely inadvertent and would have been immediately rectified if the trial judge's attention had been called to his oversight. It should also be noted that counsel upon both sides of the case were equally remiss in failing to bring the matter to his attention. At the conclusion of the charge the trial judge, addressing counsel, said, "Is there any request for additional charge or correction?" Neither the attorney for the defendants nor the assistant district attorney in charge of the prosecution suggested any additional instructions. A district attorney is a quasi-judicial officer (*Com. v. Nicely*, 130 Pa. 261, 270, 18 A. 737) and should call the attention of a trial judge to any obvious inadvertence which might require a retrial upon purely technical grounds.

The difficulty in this case does not relate to the extent of the caution which should have been given the jurors with respect to the value and weight they might assign to Ford's testimony, but arises out of the fact that the jury was not even told that he was testifying as an accomplice. We think this was a case in which the trial judge should have pointed out to the jury that Ford was testifying as an accomplice, and, after instructing them to scrutinize his testimony with care, accept it with caution, and ascertain whether it was corroborated, in whole or in part, made it clear that there is no rule of law forbidding a jury to convict upon the uncorroborated evidence of an accomplice: *Com. v. DeMasi*, 234 Pa. 570, 83 A. 430, and cases there cited; *Com. v. Polise*, 81 Pa. Superior Ct. 69; *Com. v. Perri*, 97 Pa. Superior Ct. 78.

While the extent of the admonition is largely within the discretion of the trial judge (*Com. v. Elliott*, 292 Pa. 16, 140 A. 537; *Com. v. Chrostowski et al.*, 112 Pa. Superior Ct. 466, 171 A. 901), the serious defect here is that no caution whatever was given. That adequate reference should have been made to the subject is clear from *Com. v. Haines*, 257 Pa. 289, 101 A. 641, and *Com. v. Williams et al.*, 275 Pa. 58, 118 A. 617.

As no effort to perform that duty was made in this case we have concluded appellant's motion for a new trial should have been granted solely upon the grounds above indicated. The fourth, fifth and sixth assignments are sustained.

Judgment reversed with a venire.