## Commonwealth *v.* Cardone, Appellant.

Argued April 27, 1943. Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and
RENO, JJ.

*William S. Stein,* with him *Martin G. Stein* and *S.
Maxwell Flitter,* for appellant.

*Irving W. Coleman,* Assistant District Attorney, with
him *Henry K. VanSickle,* District Attorney, for ap-
pellee.

OPINION BY RENO, J., July 16, 1943:

Appellant was convicted of accepting bawd money
under the Act of June 24, 1939, P. L. 872, §515, 18 PS
§4515, which provides that, "Whoever knowingly ac-
cepts, receives, levies, or appropriates any money or
other valuable thing, without consideration, from the
proceeds of the earnings of any woman engaged in
prostitution, is guilty of a felony ...... Any such ac-
ceptance, receipt, levy, or appropriation of such money
or valuable thing shall ...... be evidence of lack of
consideration."

The Commonwealth called two witnesses. One was
the chief of police of Easton who testified that the house
in which the other witness, Katherine Miller, was an

inmate was known as a house of prostitution in 1941 and had been so known since 1917. Katherine Miller testified that she was a prostitute in 1935 when she first met the appellant. She was placed in the Easton house by one Charles Montone who told her via telephone to give her earnings to appellant for transmission to Montone at Hot Springs, Arkansas. During February and March, 1941, appellant came from Philadelphia to the Easton house once a week for four weeks, usually on Wednesday evenings, and received from her various sums ranging from $35 to "around one-hundred dollars and something." These monies apparently were sent to Montone. The appellant did not testify and no witnesses were called on his behalf.

Appellant's contentions here relate to the sufficiency of the evidence. His first proposition is that the evidence does not prove that appellant knowingly accepted bawd money. "Knowledge is of course subjective, and whether a person knows a thing or not is generally, or at least frequently determined by circumstances": *Commonwealth v. Baker*, 115 Pa. Superior Ct. 183, 186, 175 A. 438. Here, the circumstances before the jury were that appellant knew Katherine Miller in 1935, when she was a prostitute, and in 1941 visited her four weeks in succession in a house of ill-fame and took from her fairly large sums of money. If an old English judge could discern that men do not go to houses of assignation to say their prayers,[1] modern juries and judges may infer that one who takes money from a prostitute in a house of ill-fame *knows* that he is taking the "proceeds of the earnings of a woman engaged in prostitution."

His second proposition is that the Commonwealth failed to prove that he received the money for his own use or benefit. It is true that Katherine Miller testified

---

[1] Sir William Scott in *Loveden v. Loveden*, 2 Hagg Cons. 1, 24; 161 Eng. Rep. 648, 656 (1810),

that she "found out later" that appellant had sent the money to Montone. On this basis appellant contends that he was a mere messenger without personal interest in the business. The Commonwealth conceded, and the trial judge instructed the jury, that if appellant was only a messenger he was not guilty. In his argument, appellant likens himself to "any messenger or even a postal employe." But the jury could readily perceive a very great difference. For, here was a man traveling regularly once a week from Philadelphia to Easton, a distance which the jury and we know to be approximately fifty-five miles, to collect the earnings of a prostitute in the very place where they were earned. That circumstance alone distinguished appellant from the kinds of messengers and postal employes who had come under the observation of the jury. If in that and other circumstances the jury found that appellant was something more than a mere messenger, that he was not engaged in an innocent or charitable enterprise, that his assiduity and punctuality indicated a personal interest in his mission, or that he was really acting in concert with Montone in taking the earnings of a prostitute, and thereby securing a benefit for himself, the jury had, in our opinion a solid foundation for its conclusion. After all, a juror is not bound to believe as a juror what he would reject as a man. "Nothing more is demanded of them as jurors than an honest exercise of their judgment as men." *Fife et al. v. Commonwealth,* 29 Pa. 429, 439. Jurors know the facts of life and they may act upon that knowledge. If in their capacity as jurors they exercise the intelligence and perspicacity which they exercise as men and women and look behind the form of things to their substance and find themselves convinced beyond a reasonable doubt of the reality of the substance upon evidence from which an inference of guilt may be legitimately drawn, their verdict is not subject to judicial criticism.

Appellant strongly relies upon *Commonwealth v. Pizzarella*, 88 Pa. Superior Ct. 233, but there is no comfort for him in that case. The indictment in that case was for pandering and accepting bawd money, based upon the Act of June 7, 1911, P. L. 698, which has been substantially re-enacted by the Act of 1939, supra. The defendant, a woman, accompanied a sixteen-year old girl on two automobile rides during which the girl induced by the driver, DiMario, under circumstances which precluded the defendant from having knowledge of the act of intercourse, prostituted herself for money with men they met on the highway. On the second of these occasions when the girl returned to the automobile she offered half of her bawd money "to DiMario who told her to give it to the defendant. She handed the money to defendant, who said 'Am I to keep it?' DiMario said 'Hold it until we get out of here.' *On the way home the defendant gave the money to DiMario.*" (Italics supplied). This was the Commonwealth's testimony. The defendant's testimony was to the same effect. This Court, speaking through Judge GAWTHROP said, "After a careful consideration of this evidence, we are of opinion that it would support a finding that the defendant acted in concert with DiMario in encouraging the girl to become a prostitute, and *that she knowingly received money from the proceeds of one engaged in prostitution.*" (Italics supplies).

Nevertheless, the judgment was reversed and a new trial ordered. The trial judge had charged in relation to the bawd money count: "We submit the question, did she knowingly—did she know that that money was the result of earnings by an act of prostitution? If you are satisfied beyond a reasonable doubt of these facts, then she is guilty in manner and form as indicted." This charge was condemned by this Court because under it "the jury were warranted in convicting the defendant on the second count [acceptance of bawd

money] of the indictment, although they were satisfied by the evidence that she did not receive the money for her own use, did not keep it and did not profit by the transaction." But here the trial judge did not fall into that error. In an able and lucid charge, to which only a general exception was taken, President Judge McCLUSKEY said: "You will take into consideration whether there was any agreement between Montone and Cardone to accept this bawd money; was this defendant a part and parcel of accepting this money? Is there any evidence here that after this money was accepted by this defendant, Cardone, that it went to Mr. Montone? As the Court views the situation, if a woman engaged in prostitution would go to, we'll say, a post-office or go to some other place with money, which money, the person who received it, knew it to be bawd money, and directed that that money be sent to some particular person, the mere sending of the money under such circumstances, would not constitute guilt on the part of the postmaster, or the person who received and sent the money. In this particular case, you will have to decide as a matter of fact, the question whether or not this defendant acted with Montone in concert in the acceptance of this money? If they did that, and you are satisfied that they did, satisfied beyond any reasonable doubt, the money was not transferred, you can then find a verdict of guilty in the manner and form in which defendant stands indicted. If not satisfied beyond a reasonable doubt that such was the situation, but that he was merely acting as a messenger, then your verdict will be not guilty." Under that charge appellant could be convicted only if the jury found that he had a personal, a profitable and beneficial interest in the earnings of the prostitute. The judge fairly and correctly stated the law and the jury convicted appellant upon what we believe was sufficient evidence.

The judgment of sentence is affirmed and it is ordered that defendant appear in the court below at such time as he may be there called, for compliance with the sentence or any part thereof which had not been performed at the time the appeal was made a supersedeas.