## Commonwealth *v.* Wulp, Appellant.

Argued October 26, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ. (RENO, J., absent).

*S. Maxwell Flitter,* with him *Everett Kent,* for appellant.

*Irving W. Coleman,* with him *Clyde W. Teel,* Assistant District Attorneys, and *Henry K. Van Sickle,* District Attorney, for appellee.

OPINION BY KENWORTHEY, J., January 27, 1944:

Appellant was convicted on six counts of knowingly accepting, receiving or levying money, without consideration, from the proceeds of the earnings of women engaged in prostitution.[1] The appeal brings up for consideration the sufficiency of the circumstantial evidence on which he was convicted and the question whether the court committed prejudicial error by admitting certain evidence.

Appellant admitted he was engaged in business with John Gatto, whose conviction we upheld in *Com. v. Gatto,* 154 Pa. Superior Ct. 25; that he visited more or less regularly three of the four bawdy houses involved; that, on occasion, he collected money from one or more of the inmates or from the madam. His defense was that he was engaged in the legitimate business of selling novelties; that, although he knew the illicit nature of the business conducted at these houses, he never collected any money except for goods which he had sold, and that, therefore, he had not received the money without consideration. He also admitted that "he did errands" for two of the houses, that he put up cash bail for two of the prostitutes, that he ar-

---

[1] Act of June 24, 1939, P. L. 872 §515, 18 PS §4515.

ranged bail for the release of several other prostitutes, and that he otherwise showed what he would like to have regarded as merely a "friendly interest" in the enterprises.

The question narrows to whether the commonwealth produced sufficient evidence to overcome the presumption of innocence.

It was shown that appellant's visits to the houses were periodic and regular. He called on either Friday or Saturday night. When he called, he was handed, by the madam, an envelope. Usually, when the envelope was handed to him, little or nothing was said. There was direct evidence that, on at least one occasion, the envelope contained money. He told an inmate that if she wished to open a house of her own, protection would be afforded her. He asked one of the inmates to inform the madam of one of the houses that she was three weeks' back in her protection money. He not only arranged bail for the discharge of several of the prostitutes, but he appeared at the alderman's office at the time of the hearing, walked home with several of them after their discharge and, on the way home, told them: "'I don't want you girls running around Easton, you might be picked up again ...... You better get out of here and stay out until you are sent for.'" On one occasion, when the madam was short of funds, he gave her the money to pay two of the prostitutes. He arranged hospital attention and for an operation for one of the prostitutes. He directed one of the prostitutes, after a raid, not to appear for the hearing before the mayor. In the presence of several witnesses, on an occasion, Gatto told him "to take 'Big Ben' off the protection roll," and he replied, "'I will take care of that.'" He loaned money to the panderer of one of the prostitutes.

The commonwealth asked the jury to infer that all, not merely the one about which there was direct proof,

of the envelopes contained money and represented regular collections by appellant for protection which he was supposed to furnish. In our opinion, the evidence amply supported the inference. The regularity of the transfer of the envelopes, together with proof that at least one of them contained cash, was enough, together with the other proven circumstances, to permit the inference that they all contained cash. The degree of solicitude for the welfare of the business conducted in the houses and for the persons conducting it was enough to convince any person possessed of a reasonable amount of common sense that it was much more than the legitimate concern of a novelty salesman for the comfort and safety of his customers. See *Com. v. Cardone,* 152 Pa. Superior Ct. 466, 33 A. (2d) 94.

Objection was made to the admission of some of the evidence to which we have referred on the ground that it related to disconnected offenses not at issue in the present case. The objection was based on a misconception of the purpose for which it was offered and the theory of its admissibility. The commonwealth's case was built almost entirely on circumstantial evidence. In order to overcome the presumption of innocence, the commonwealth was bound to show the extent of appellant's participation in the illicit enterprises. We had occasion to discuss this same contention in the *Gatto* case. In our opinion, it was all admissible.

The judgment is affirmed and defendant is directed to appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with his sentence or any part of it that had not been performed at the time the appeal was made a supersedeas.