Commonwealth *v.* Charen et al., Appellants.

Argued October 4, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Garfield W. Levy*, with him *Walter N. Kennedy, Jr.*, for appellants.

*Samuel Dash*, Assistant District Attorney, with him *Victor Wright*, Assistant District Attorney, *Michael von Moschzisker*, First Assistant District Attor-

ney, and *Richardson Dilworth,* District Attorney, for appellee.

OPINION BY GUNTHER, J., January 14, 1955:

Charles Charen and Helen Charen were indicted on three bills; on bill No. 134 for prostitution and assignation, on bill No. 135 for conspiracy, and on bill No. 133 for pandering. They were found guilty on each of the three bills. A motion for new trial was granted as to bill No. 135, and a motion in arrest of judgment was granted as to bill No. 134. A motion for a new trial on bill No. 133 was denied and the defendants have appealed. Bill No. 133 presented that the defendants did "feloniously induce, persuade, inveigle, and encourage a female person, to wit, one Ann McMaster, to become a prostitute." The language of the indictment is based on the Act of June 24, 1939, P. L. 872, §513, 18 PS §4513. The statute classifies eight different offenses, a violation of any one of which warrants a conviction for pandering: "(1) Whoever procures a female inmate for a house of prostitution; or (2) induces . . . a female person to become a prostitute; or (3) by promise, threat . . . induces . . . a female person to become an inmate of a house of prostitution . . . ; or (4) by promise, threat . . . induces . . . an inmate of a house of prostitution . . . to remain therein as such inmate; or (5) by threat . . . by fraud or artifice, or by duress . . . procures any female person to enter any place within this Commonwealth in which prostitution is practiced, . . . for the purpose of prostitution; . . . (6) or . . . procures any female person to come into this Commonwealth or to leave this Commonwealth for the purpose of prostitution; (7) or takes or detains a female, with the intent to compel her . . . to marry him or to marry any other person; (8) or receives or gives . . . any money or thing of value for procuring . . . any fe-

male person to become a prostitute, or to come into this Commonwealth . . . for the purpose of prostitution, is guilty of pandering . . ."

The trial judge in his instructions to the jury read that portion of the statute which defines separate crimes, one and three, for which the defendant had not been indicted. He said: "The defendants, Charles Charen and Helen Mansky Charen, are charged in Bill of Indictment Number 133 of June Sessions 1953 with the crime of Pandering; . . . Pandering is the procuring for others of the means of gratifying lust. Our Legislature has provided that whoever procures a female inmate for a house of prostitution or induces, persuades, encourages, inveigles or entices a female person to become a prostitute, or by promise, threat, violence, or by any device or scheme, causes, induces, persuades, encourages, takes, places, harbors, inveigles or entices a female person to become an inmate of a house of prostitution, an assignation place, or any place where prostitution is practiced, encouraged or allowed, etc., shall be deemed guilty of pandering." Did the trial judge err by informing the jury that the defendants were "charged . . . with the crime of pandering", and then to go too far by defining pandering as set forth in the first three offenses as enumerated by the statute instead of quoting only that part of the statute charged in the indictment? We hold that it is error for the court to read those portions of a statute which do not define the crime charged. The court read definitions of three of the eight possible offenses, as follows: "whoever procures a female inmate for a house of prostitution or induces, persuades, encourages, inveigles or entices a female person to become a prostitute, or by promise, threat, violence, or by any device or scheme, causes, induces, persuades, encourages, takes, places, harbors, inveigles or entices a female per-

son to become an inmate of a house of prostitution, an assignation place, or any place where prostitution is practiced, encouraged or allowed, etc., shall be deemed guilty of pandering." The jury was thereby instructed that the defendants could be found guilty of pandering if the testimony sustained any of the three definitions given in the charge. However, the indictment charged guilt under only one of those three specifications. Defendants were charged not with pandering in general, but specifically with "inducing a female person to become a prostitute". This constituted fundamental error requiring a new trial.

The testimony of the Commonwealth indicated that the defendants might be guilty of pandering under any one or all three of the definitions enunciated in the charge. It has been held by this Court that the eight definitions of pandering in Section 513 of The Penal Code delineate separate offenses and have separate meanings, any one of which constitutes pandering. *Commonwealth v. Stingel*, 156 Pa. Superior Ct. 359, 40 A. 2d 140. There is, therefore, the distinct possibility that the defendants were found guilty of an offense for which they were not indicted.

It is fundamental that a defendant cannot be convicted of an offense for which he was not indicted. *Commonwealth v. Komatowski*, 347 Pa. 445, 32 A. 2d 905. In *Commonwealth v. Wadley*, 169 Pa. Superior Ct. 490, 83 A. 2d 417, a conviction of burglary was reversed, where, at the same trial, there was a conviction of mayhem on an indictment ignored by the grand jury. Although the *Wadley* case involved much clearer error than this case, the language in that opinion is appropriate here: " 'But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error,

it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or *if one is left in grave doubt,* the conviction cannot stand.' " There is grave doubt from this record as to the basis for the jury's finding of guilty. Were the defendants found guilty of inducing to become a prostitute, as charged in the indictment, or convicted of one of the two other choices given the jury in the charge? One can only conjecture the answer.

Commonwealth contends that defendants cannot complain of the charge, having taken only a general exception thereto, which limits appeal to basic or fundamental error. *Commonwealth v. Moskorison,* 170 Pa. Superior Ct. 332, 85 A. 2d 644. However, fundamental error does appear, requiring the grant of a new trial.

Judgment reversed and a new trial awarded.