Commonwealth *v*. Williams, Appellant.

Argued June 18, 1958. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

Before CARROLL, J.

*Martin Vinikoor,* with him *Vinikoor & Criden,* for appellant.

*Charles L. Durham,* Assistant District Attorney, with him *Juanita Kidd Stout,* Assistant District At-

torney, *James N. Lafferty,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY WOODSIDE, J., September 11, 1958:

These are appeals from the judgments of sentence of the Court of Quarter Sessions of Philadelphia County. Defendant, Harry Williams, was indicted on nine bills of indictment charging prostitution and assignation, keeping and maintaining a bawdy house, and feloniously accepting bawd money on various dates. He was tried before President Judge Vincent A. Carroll and a jury on October 15, and 16, 1957, together with two other defendants, Jacob Goldberg and Otto Stalworth. These two defendants, during the course of the trial, changed their pleas to guilty.

The Commonwealth produced as witnesses Pauline Johnson, who had been convicted of operating a bawdy house in the building which the defendant managed; Maxine McKissick, who had been convicted of prostitution committed in Pauline Johnson's apartment; and one Willie Martin. Pauline Johnson testified that she gave the defendant $100 on June 1, 1956, $75 the following Friday, and $25 the following Monday; that she gave the defendant $100 on July 5, 1956 and again on July 13, 1956; and that she gave him $75 on August 1, 1956, and $50 the following Friday. She testified on cross-examination that the total "extra money" she gave Williams amounted to $555. She further testified that this money was "coming out of my hard-earned money and came from prostitution".

Maxine McKissick testified that she saw Pauline Johnson pay Williams $200 on June 1, 1956, $200 on July 1, 1956, and $150 on August 1, 1956.

A third witness, one Willie Martin, testified that on July 6, 1956, he saw the witness, Pauline Johnson,

give the defendant $100, and that out of that sum he had loaned her $40.

At the completion of the Commonwealth's case, the assistant district attorney moved to amend the date in bill of indictment No. 489 to read, "That on or about June 1, 1956," and the bills of indictment Nos. 485, 486, 487 and 488 were withdrawn by the Commonwealth as being duplicates.

The defendant produced eleven character witnesses to testify as to his good reputation. He took the stand on his own behalf, and denied receiving any "extra money" other than for rent from the witness, Pauline Johnson. He further denied that he ever knowingly permitted prostitution in Pauline Johnson's apartment or in any apartment in the Flamingo, the apartment house of which he was manager.

Defendant assigns eight grounds for reversal which pertain to the sufficiency of the evidence and to alleged errors in the court's charge and sentence. In regard to the sufficiency of the evidence, defendant contends that the charge of keeping and maintaining a bawdy house should have been dismissed, since there was no date in the indictment upon the charge of keeping and maintaining a bawdy house or upon the charge of frequenting a bawdy house.

The first count in indictment No. 484 stated that the defendant ". . . on the fifteenth day of May in the year of our Lord one thousand nine hundred and fifty six and thereafter on diverse dates continuing to and including August 16, 1956, at the County aforesaid . . . did unlawfully keep and maintain, . . . a common, ill-governed and disorderly house and place . . ." The remaining counts of indictment No. 484 specified no dates, but charged the defendant with keeping and maintaining a bawdy house, and of frequenting a bawdy house.

The court instructed the jury to disregard the charge of keeping a disorderly house and directed them to find the defendant not guilty on that count.

It appears clear that the time alleged in the first count was also intended as the time of the other counts. Obviously this was sufficient to inform the defendant of the time of the offenses for which he was charged. The defendant made no objection at the trial, nor did he request a bill of particulars at any time. The bill is one indictment regardless of whether it contains more than one count. No evidence was introduced at the trial of any time other than that specified in the first count of the indictment, and we cannot see how the defendant could have been prejudiced by the omission of the dates from the last two counts.

Defendant cites *Commonwealth v. Nailor,* 29 Pa. Superior Ct. 271 (1905) and quotes therefrom, p. 272: "In an indictment, some specific date must be stated as that on which the offense was committed." The Court in that case goes on to say: "the date laid must be prior to the day on which the indictment is found; it must be within the period fixed by the statute of limitations for the finding of the indictment; and, in the case of a statutory offense, it must be subsequent to the enactment of the statute. If the time laid is uncertain or impossible, or is laid on different days when the offense is a single act, or is subsequent to the finding of the indictment, or anterior to the statute creating the offense, or makes the indictment inconsistent with itself, it is a fatal objection even after verdict."

In the *Nailor* case the date in the indictment was subsequent to the finding of the indictment and, therefore, fell within the class of cases rendering the mistake fatal. Such is not the case before us, nor is the present offense a single act requiring that there be a single time laid on the indictment.

Defendant also contends that his motion in arrest of judgment should have been sustained on Indictment No. 491, charging him with feloniously accepting bawd money on July 3, 1956, since the evidence produced showed that the payment was made on July 6. Defendant was indicted under three separate indictments for accepting bawd money. Indictment No. 489, charged the offense on July 2, 1956, Indictment No. 490, on August 1, 1956, and Indictment No. 491, the indictment complained of, set the date of the offense as July 3. The district attorney moved to amend the date in bill No. 489 to June 1, 1956. The evidence showed payments of money made by Pauline Johnson, the operator of the bawdy house, on June 1, and a week thereafter, on July 6, July 13, August 1, and a week thereafter. There is no merit in the defendant's contention that the jury could not convict him of accepting the bawd money on July 6, where the indictment charged him with accepting it on July 3. It has been stated by the appellate courts of this Commonwealth too often to deserve much comment, that the date set forth in the indictment is not controlling and that any other time may be shown on the trial if it is prior to the finding of the indictment and with the period prescribed by the statute of limitations, so long as time is not the essence of the offense. See *Commonwealth v. Haimbach*, 151 Pa. Superior Ct. 581, 30 A. 2d 653 (1943); *Commonwealth v. Morrison*, 180 Pa. Superior Ct. 121, 18 A. 2d 258 (1955).

Defendant further contends that the evidence was insufficient to sustain any of the charges of feloniously accepting bawd money since the evidence did not establish that the money received by the defendant was out of the earnings of the specific prostitute alleged in the bill of indictment. Defendant concedes that the evidence viewed in the light most favorable to the Com-

monwealth, as is imperative in this appeal, the jury having returned a verdict of guilty, establishes that the money given to the defendant by the prosecution witness, Pauline Johnson, was money she received from prostitution generally. The indictment charges that the money was received from the earnings of one Maxine McKissick. The Commonwealth established that there were only two women occupying the apartment wherein the prostitution was carried out, Pauline Johnson and Maxine McKissick. Defendant elicited upon cross-examination testimony from Pauline Johnson that two other girls had been in the apartment sometime during the period in question. However, from the entire record it is apparent that the prostitute of this bawdy house was Maxine McKissick.

The defendant contends that the Commonwealth was bound to prove that the money came from Maxine McKissick. He cites as authority the case of *Commonwealth v. Robertson,* 178 Pa. Superior Ct. 281, 116 A. 2d 224 (1955). That case is clearly distinguishable from the present one. In the *Robertson* case there was no evidence that the defendant accepted any money which came from prostitution. The prosecution witness in that case never gave any money to the defendant. The only testimony was that she had seen a man pay the defendant two dollars before the man took her upstairs and had intercourse with her. Under these circumstances it was necessary to prove that the defendant "received money without consideration from the proceeds of *her* earnings." As a general rule, however, where the defendant knowingly accepts bawd money it need not be proved that the money was the proceeds from the activity of a specific prostitute. See *Commonwealth v. Wulp,* 154 Pa. Superior Ct. 278, 35 A. 2d 566 (1944).

Defendant also complains that the court below committed reversible error by the admission of sub-

stantial evidence against two co-defendants, who during the course of the trial changed their pleas to guilty. Defendant made no objection to this at the trial, nor did he object to being tried with the two co-defendants. The trial judge thoroughly cautioned the jury during the trial and in his charge at the time. During the trial the court instructed the jury on one occasion: "Members of the jury, conversations outside of his hearing are not applicable to him at all. I repeat again, you understand that when a witness testifies to certain things which happened, if they are things pertaining to one defendant, then you can consider that evidence against that defendant, but unless they relate specifically to other defendants, the defendants to which they do not pertain are not affected adversely by the statement", and on another occasion: "I will tell the jury as I charge them, as I tell them now, that any testimony given that would implicate this gentleman, Mr. Williams, not made in his presence, but made in conversations with others, that was admissible against the others but would not be admissible against him if he were sitting here alone, so you forget all about that." During the charge, the court instructed the jury to disregard the evidence which was not admissible against the defendant.

The court was diligent in instructing the jury not to consider the testimony which would have been admissible against the two co-defendants and inadmissible against the appellant. All of the testimony pertaining to the co-defendants which was not excluded by the judge's remarks, would have been admissible against the defendant, Williams, to show that prostitution was being carried on on the premises, an essential ingredient of the crimes with which the defendant, Williams, stood charged.

Defendant contends that the trial judge made a number of errors in his charge to the jury. In the

consideration of this contention it must be noted that defendant's counsel took merely a general exception to the charge and did not specifically object to any of the errors about which he now complained. This Court, therefore, can consider only the question of whether any error in the charge was basic and fundamental, and could not have been corrected at the trial. *Commonwealth v. Parente*, 184 Pa. Superior Ct. 125, 133 A. 2d 561, affirmed 392 Pa. 48 (1958); *Steele v. France*, 363 Pa. 165, 69 A. 2d 368 (1949); *Keener v. Hupert*, 386 Pa. 412, 126 A. 2d 713 (1956); *McDonald v. Ferrebee*, 366 Pa. 543, 79 A. 2d 232 (1951); *Halpern v. Western Pennsylvania Chemical Co., Inc.*, 182 Pa. Superior Ct. 354, 357, 126 A. 2d 502 (1956). We find no such error.

Defendant claims that the trial court erroneously instructed the jury concerning crimes for which the appellant had not been indicted. His objection is to the portion of the court's charge which stated: ". . . that a man can be guilty of prostitution where a woman offers her body through him to someone else, and the copulation or the act of intercourse occurs." The grand jury had removed from the indictment the count charging prostitution but had returned a true bill upon the count of permitting a building to be used for the purpose of prostitution and assignation and aiding and abetting prostitution and assignation. We feel that the jury was not misled by the judge's instruction. Had the jury found that the defendant had had a woman offer her body through him to someone else, he would have clearly been guilty of aiding and abetting prostitution, for which he was properly indicted. Defendant cites *Commonwealth v. Charen*, 177 Pa. Superior Ct. 522, 111 A. 2d 155 (1955). In the *Charen* case, the defendant had been indicted for only one of eight different offenses, all of which were "pander-

ing" under the statute. The judge there read three of the offenses to the jury. This Court there held that the error was fundamental and entitled defendant to a new trial, although no specific exception was taken to the charge. In the *Charen* case the defendant was indicted for inducing a female person to become a prostitute and the judge's charge permitted the jury to find the defendant guilty if it found that he procured a female inmate for a house of prostitution, or that he, by promise or threat, induced a female person to become an inmate of a house of prostitution. The defendant there could have been guilty of procuring, for which he was not indicted, without being guilty of inducing a female person to become a prostitute, the charge upon which he was indicted. In the present case, defendant could have been found guilty under the indictment if he committed any of the acts by which the court defined the crime of prostitution and assignation generally, to the jury.

Defendant further complains that the crime of feloniously accepting bawd money was not adequately defined. We find no merit in this contention. The court adequately defined to the jury what bawd money was and stated: "then the accepting by the person who managed it, who maneuvered the whole thing, receiving from the result of that illicit copulation, that illicit intercourse, money which was paid for that illicit act." It would seem that the charge of the court narrowed the offense and placed a heavier burden upon the Commonwealth than was actually warranted. Of this the defendant can scarcely complain.

Defendant further maintains that the court failed to instruct the jury that the Commonwealth's witnesses were accomplices, and, therefore, their testimony required close scrutiny, citing *Commonwealth v. Beck,* 137 Pa. Superior Ct. 410, 9 A. 2d 175 (1939).

In the *Beck* case, the court failed to caution the jury at all concerning the testimony of the accomplices. In the present case the court adequately cautioned the jury as follows: "Most of the testimony of the Commonwealth comes from witnesses that you must have seen are of a corrupt nature, a corrupt source, and when you look for credibility, that is one of the factors you will look for, and I will so instruct you that where the source is a polluted source, there is a look of disfavor by the law on that character of proof, because the source is corrupt."

The court charged at length concerning the corrupt source of the Commonwealth's evidence. Although he did not specifically mention that the witnesses were accomplices, we think that the court adequately cautioned the jury concerning this testimony.

We think that the defendant was not prejudiced by the comment of the court upon evidence excluded at the trial, indicating that defendant knew "something was going on" in other places in the apartment house. If a remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all, and one is not left in doubt that it had no substantial influence in the case, it will not vitiate an otherwise fair trial. *Commonwealth v. Parente,* supra, 184 Pa. Superior Ct. 125, 133 A. 2d 561 (1957) ; *Commonwealth v. Phillips,* 183 Pa. Superior Ct. 377, 132 A. 2d 733 (1957).

Defendant also contends that it was error for the court to impose consecutive sentences on two of the bills, the offenses of which arose out of the same transaction. In this regard he cites *Commonwealth ex rel. Tokarchik v. Claudy,* 174 Pa. Superior Ct. 509, 102 A. 2d 207 (1954) ; and *Commonwealth ex rel. Shaddock v. Ashe,* 340 Pa. 286, 17 A. 2d 190 (1941). In both of those cases it was held that the crimes of aggravated

assault and battery merged with assault and battery with intent to commit rape and that consecutive sentences could not be imposed on the separate charges. These cases, however, are inapplicable to the present case. The rule is that the test of whether one criminal offense has merged into another, is not whether the two criminal acts are successive steps of the same transaction, but whether one crime necessarily involves the other. The same transaction test is valid only when transaction means a single act. *Commonwealth ex rel. Moszczynski v. Ashe,* 343 Pa. 102, 21 A. 2d 920 (1941); *Commonwealth v. McCusker,* 363 Pa. 450, 70 A. 2d 273 (1950).

In the present case, the crime of feloniously accepting bawd money, is not a necessary ingredient of the crime of aiding and abetting prostitution and assignation. Defendant here, knowingly permitted and encouraged prostitution in the apartment house of which he was manager and over which he had control. In doing so he was clearly guilty of a violation of the Act of June 24, 1939, P. L. 872, §512, 18 PS §4512, prohibiting prostitution and assignation. The acceptance of bawd money, which constituted a violation of section 515 of the act, 18 PS §4515 is a separate and distinct offense and is not a necessary ingredient of the crime of prostitution and assignation. Defendant, therefore, could have been sentenced on both indictments.

Judgment of sentence is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentences, or any part of them which had not been performed at the time this appeal was made a supersedeas.