Commonwealth *v.* Wadley, Appellant.

Argued April 16, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Herman I. Pollock,* with him *Joseph Alessandroni, Jr.,* and *Francis E. Marshall,* for appellant.

*Charles C. Gordon,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY RENO, J., September 26, 1951:

As to one phase of this case, the Commonwealth has confessed error, and the question is: Was it reversible error?

Through an unprecedented concatenation of strange errors appellant was convicted of mayhem, a crime for which he had not been indicted. To No. 333 January Sessions, 1951, appellant was indicted for burglary with intent to commit a felony, i.e., rape; to No. 334, malicious mischief; and to No. 335, aggravated assault and battery and assault and battery with intent to ravish. The bill, to No. 336, charging mayhem, was *ignored* by the grand jury. All the charges grew out of one offense. All the indictments, including, contrary to custom, the ignored bill, were brought into court. The able and experienced assistant district attorney failed to observe the ignoramus. Appellant's counsel, a voluntary defender, who is described as "a competent lawyer but inexperienced in the trial of criminal cases," endorsed a plea of not guilty, directly under the grand jury's return, without noting that it had been ignored. Whether the trial judge saw the bills does not appear, but in his charge he devoted more time defining mayhem than the other crimes. The jury found appellant guilty of all charges. The court sentenced appellant on bill No. 333, and suspended sentence on the others. Later, but within the same session, upon appellant's motion for a new trial, the court vacated the order suspending sentence in No. 336, and refused a new trial.

These appeals brought up the records in Nos. 333 and 336.

The Commonwealth's testimony tended to prove that appellant threw a brick into the window of a cashier's booth on an elevated station of the Philadelphia Transit Company, and thrust his arm into the booth to seize the female cashier. She left the booth to avoid his assault, and he seized her on the outside, put his hands under her clothing, tearing several buttons on her dress, and, in the struggle, bit her cheek and arm. Because the testimony of the biting was relevant to the charge of burglary with intent to commit rape without a separate indictment for mayhem, the Commonwealth argues that appellant's trial and conviction for mayhem upon the ignored bill was harmless error.

I. It will be observed, to begin with, that appellant's constitutional rights were violated. "No person shall, for any indictable offense, be proceeded against criminally by information": Constitution of Pennsylvania, Art. 1, §10. "In all criminal prosecutions the accused hath a right . . . to demand the nature and cause of the accusation against him . . .": Id. Art. 1, §9. The prohibition in §10 and the guarantee in §9 provide and require an indictment as the only process whereby an accused can be brought to trial for an indictable offense. *Dauphin Co. Grand Jury Investigation Proceeding (No. 2)*, 332 Pa. 342, 354, 2 A. 2d 802. "No man can be tried for a crime except upon a bill of indictment duly found by a grand jury": *Hartranft's Appeal*, 85 Pa. 433, 453. See 42 C. J. S., Indictments and Informations, §1; 27 Am. Jur., Indictments and Informations, §2.

True, under the Act of April 15, 1907, P. L. 62, §1, as amended by the Act of June 15, 1939, P. L. 400, §1, 19 P.S. §241, an accused may "waive an indictment by a grand jury", and he may enter a plea of guilty or

not guilty upon a bill of indictment prepared by the district attorney "in the usual form". The original Act and the amendment were held constitutional in *Com. ex rel. v. Francies*, 250 Pa. 496, 95 A. 527, and *Com. ex rel. v. Ashe*, 350 Pa. 493, 39 A. 2d 610. Here, appellant did not waive indictment by a grand jury. The bill was actually submitted to a grand jury which ignored it. There was, therefore, no indictment against him; no exhibition of an "accusation against him"; and he was tried for an indictable offense without an indictment. Appellant's right to an indictment found by a grand jury was denied him, and he was deprived of a substantial and basic right. "The doctrine of harmless error does not apply where accused has been deprived of a substantial right": 24 C. J. S., Criminal Law, §1887. "On the other hand, if an accused is, by the erroneous action of the trial court, deprived of a substantial right, the error cannot be deemed harmless, however clear the proof of his guilt may have been:" 3 Am. Jur., Appeal and Error, §1005. See also *Com. v. Robinson*, 317 Pa. 321, 176 A. 908, where a new trial was ordered because the record failed to show entry of a plea and swearing of the jury. Inviolability of constitutional right is more precious to the Commonwealth and to all men than the punishment of any one individual.

II. Nor can the entry of a plea upon the ignored bill adversely affect appellant's right in the circumstances of this case. It was an error shared by all participants, the prosecuting attorney, appellant's counsel, the trial judge, and perhaps the jury. "A man is not to be deprived of his liberty and reputation because of the inadvertence of a trial judge or the carelessness of his counsel in failing to call the attention of the trial court to palpable error which offends against the fundamentals of a fair and impartial trial": *Com. v. O'Brien*, 312 Pa. 543, 546, 168 A. 244.

III. Approaching the problem from another viewpoint, the conclusion that the harmless error rule will not cover the instant case becomes definitely clear. The rule has never been rigidly defined and its boundaries remain unplotted. In the absence of a precise formula the courts frequently apply a pragmatic test: What effect did the error have upon the jury? Thus, in *Kotteakos v. U. S.*, 328 U. S. 750, 764, 66 S. Ct. 1239, 1248, which the digests indicate is fast becoming the leading authority,[1] Mr. Justice RUTLEDGE lucidly stated the guiding principle: "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, *except perhaps where the departure is from a constitutional norm or a specific command of Congress. . . .* But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or *if one is left in grave doubt*, the conviction cannot stand." (Emphasis added.)

Of course, the problem involves examination of subjective phenomena, the psychological impact of the error upon the minds of the jurors, and appraisement of the impact rests upon a conviction or, more accurately, upon an intuition so subtle that it defies objective demonstration. Yet the subjective effect possesses reality. Mr. Justice, afterwards Chief Justice MAXEY, in

---

[1] Quoted with approval: *Com. v. Barnak*, 357 Pa. 391, 423, 54 A. 2d 865; *Com. v. Blose*, 160 Pa. Superior Ct. 165, 170, 50 A. 2d 742; *Com. v. Roberts*, 161 Pa. Superior Ct. 548, 555, 55 A. 2d 577; *Com. v. Sarkis*, 164 Pa. Superior Ct. 194, 201, 63 A. 2d 360.

*Com. v. Fugmann,* 330 Pa. 4, 18, 198 A. 99, a contra application of the harmless error doctrine, recognized that "testimony has both a logical and psychological effect in varying ratios." Here, one need scarcely speculate about the effect of the error upon the jurors. Trial of an accused for two or more crimes growing out of one offense cannot but influence a jury. Its natural tendency is to produce a prima facie conviction of the legal enormity of the offense, to magnify the degree of the transgression, and to notify the triers that the Commonwealth is bringing to the bar of justice a man charged with flagrant crimes. And when, as here, the accused is actually tried for a crime with which he has not been legally charged, although it was allegedly committed in the perpetration of the crimes for which he was properly indicted, the impact cannot be less.

Protracted reflection upon all facets of the case, with every will to approve an apparently just verdict, *has left us in grave doubt,* and accordingly we cannot sustain the conviction. We cannot assert that the record reveals a case free from substantial prejudice. A glaring infringement of appellant's constitutional rights is exposed, and that circumstance interdicts the conclusion that he had a fair trial.

IV. Recently the Supreme Court has said, but perhaps as obiter dicta, that an appeal will not lie from a conviction where no sentence was imposed thereon. *Com. ex rel. Holly v. Ashe,* 368 Pa. 211, 82 A. 2d 244.[2] Here sentence was suspended upon the conviction for mayhem and subsequently the conviction was vacated

---

[2] The effect of the pronouncement in the *Holly* case upon prior decisions need not now be considered. See, inter alia, *Com. v. Trunk,* 311 Pa. 555, 167 A. 333; *Com. v. Ragone,* 317 Pa. 113, 176 A. 454; *Com. v. Haines,* 130 Pa. Superior Ct. 196, 196 A. 621; *Com. ex rel. v. Smith,* 130 Pa. Superior Ct. 536, 198 A. 812; *Com. v. Tluchak,* 166 Pa. Superior Ct. 16, 70 A. 2d 657; *Com. v. Crooks,* 166 Pa. Superior Ct. 242, 70 A. 2d 684.

by the trial judge. Consequently there is no sentence and indeed no conviction, and the appeal, relating to the mayhem case will be quashed.

But still the question persists: Could the jury's deliberation on the burglary indictments have been influenced by the pending mayhem charge?

The learned trial judge, whose scholarly opinion has had our acute attention, rests his decision upon the familiar line of cases wherein convictions have been sustained even though there were misjoinders of counts in the indictments, and upon analagous principles.[3]

But here we are not dealing with what Mr. Justice AGNEW called a "mere technicality" in the leading misjoinder case, *Henwood and Arney v. Commonwealth,* 52 Pa. 424, 425, principal reliance of the court below. Much more than a trivial or technical mistake in procedure or pleading is involved. We are concerned with a fundamental error, a gross violation of a constitutional right which, as we have shown, *could* influence the action of the jury, a *potentially* deleterious influence which we cannot confidently assert did not *actually* prejudice appellant. The mutual or concurrent error permeated the entire trial, and we are obliged to hold that the trial for mayhem in connection with the trial for burglary invalidated the conviction for the latter crime.

V. Appellant's further contentions do not require discussion. To the extent that they possess merit they will undoubtedly receive attention at the new trial. It should, however, be said that the structure, called a "cashier's booth" in the indictment and the evidence, should be more fully described by testimony to bring

---

[3] Citing *Henwood and Arney v. Com.,* 52 Pa. 424; *Com. v. Antico,* 146 Pa. Superior Ct. 293, 22 A. 2d 204; *Com. v. Eberhardt,* 164 Pa. Superior Ct. 591, 67 A. 2d 613; *Com. v. Holgate,* 63 Pa. Superior Ct. 246; *Com. v. Bitler,* 133 Pa. Superior Ct. 268, 2 A. 493; *Com. v. VanBuskirk,* 155 Pa. Superior Ct. 613, 39 A. 2d 311.

it within the category of buildings, as that term is employed in The Penal Code of June 24, 1939, P. L. 872, §901, 18 P.S. §4901.

The appeal to No. 134 October Term, 1951, is quashed.

In No. 133 October Term, 1951, the judgment and sentence are reversed, and a new trial is awarded.