Commonwealth *v.* Kimmel, Appellant.

Argued October 6, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*F. Lyman Windolph*, with him *Windolph & Johnstone*, for appellant.

*Paul A. Mueller*, with him *William C. Storb*, First Assistant District Attorney, and *John W. Beyer*, District Attorney, for appellee.

OPINION BY RENO, J., November 12, 1952:

Appellant was convicted upon two indictments which were tried together in the court below. One indictment charged fraudulent conversion, larceny and receiving stolen goods; he was convicted of fraudulent conversion and receiving; and found not guilty of larceny. Sentence was imposed for receiving and suspended for fraudulent conversion. The other indictment charged appellant and Frank E. Hauck with conspiracy; Hauck pleaded guilty;[1] and appellant was convicted and sentenced for that offense.

Appellant's contentions are: First, that the evidence does not support the convictions for fraudulent conversion and receiving; and second, that the court below erroneously consolidated the trial of the two indictments.

Appellant, a junk dealer, had a contract with Armstrong Cork Company for the purchase of non-ferrous scrap material. Hauck, employe of Armstrong, was the "leader" of its salvage yard, charged with the duty of determining which of the waste material was salvageable and which was scrap. The salvage was returned to the plant and Hauck delivered the scrap to the junk dealers who had contracted for its purchase.

Hauck testified for the Commonwealth and from his and other testimony, the details of which need not be here related, the jury could have found, and doubtless did, that in consideration of some twenty-five dollars a month, Hauck "light-weighed" the non-ferrous scrap placed on appellant's trucks, so that appellant received more material than he paid for to Armstrong. In his opinion denying a new trial, Judge WISSLER, by way of example, explained the method employed by

---

[1] Hauck also pleaded guilty to fraudulent conversion and to embezzlement.

Hauck: "If the tare or empty weight of the truck was 8000 pounds Hauck would jump it up to 8300 pounds, or it was done on the gross weight, for example, if the gross weight of the truck loaded was 10,000 pounds it would be reduced to 8000 pounds. By so doing defendant would receive poundage of materials without it appearing on the records of the Armstrong Cork Company." Appellant denied the charges generally, and specifically the existence of a conspiracy between Hauck and himself, and the jury did not believe him.

Appellant argues that when Hauck, following his instructions, divided the non-ferrous scrap from the other materials in the yard and delivered the former to appellant, pursuant to his purchasing contract, Hauck passed title to the goods to appellant, so that appellant was receiving his own goods and not Armstrong's. However valid the contention may be in respect to The Sales Act, upon which and a related case appellant relies,[2] it cannot prevail in this factual context. It ignores the sordid realities of this situation. Obviously, Hauck was not authorized to perpetrate a fraud upon his employer, to part with its assets for his own personal profit, or to deliver scrap to appellant without reporting its true weight to Armstrong.

Armstrong was the owner of the scrap, and the scrap was in its possession, in its yard on its premises. Hauck had charge of the yard for the limited purpose of dividing the materials and delivering the non-salvageable scrap to junk dealers. *He was a mere custodian of the goods.* He was like the clerk in *Com. v. Brandler*, 81 Pa. Superior Ct. 585, 588, who was authorized to sell goods, but when he converted them to his own use he was guilty of larceny, because "the goods were in the pos-

---

[2] Act of May 19, 1915, P. L. 543, §19, 69 P.S. §143; *Scott v. Wells*, 6 W. & S., 357.

session of the employer." He was like the warehouse "checker" in *Com. v. Ott,* 154 Pa. Superior Ct. 647, 653, 36 A. 2d 838, who was authorized to deliver 11,000 pounds of sugar to the truck driver Tenaglio, but when, pursuant to a corrupt bargain, he delivered 19,100 pounds to Tenaglio, we said bluntly, "that appellant [Ott] and Tenaglio, acting in concert, *stole* 8,100 pounds of sugar and falsified the refinery's records to conceal their deed", and Ott's conviction of larceny, receiving and conspiracy was sustained by this Court. (Emphasis added.)

Fortified by many authoritative cases, the text writers have stated the applicable principle in varied forms. "[W]here one having only the bare charge or custody of property for the owner converts it animo furandi, he commits a trespass and is guilty of larceny, the possession, in judgment of law, remaining in the owner until the conversion" : 32 Am. Jur., Larceny, §56. "A person who has the mere custody of personal property of another is guilty of larceny if, with felonious intent, such person converts such property" : 52 C. J. S., Larceny, §30. "The apparent possession of a servant, or employe, may be what is called 'custody' merely, and the doctrine of the cases is that although the 'custody' is obtained from the owner with his consent, the possession may still abide with him, and that the custodian may deprive him of this possession by some later and illegitimate act of appropriation to a use not within the scope of the purpose for which the 'custody' was imparted to him": 1 Trickett, Criminal Law in Pennsylvania, p. 17.

Hauck was clearly guilty of larceny. He had "stolen or feloniously taken" Armstrong's property, and appellant, through his corrupt agreement with Hauck, knew that it had been stolen, and was as clearly guilty of receiving stolen goods. Act of June 24,

1939, P. L. 872, §817, amended by the Act of May 21, 1943, P. L. 306, §1, 18 P.S. §4817.

Sentence was suspended on the conviction for fraudulent conversion, and because no final judgment was entered on the verdict, it will not be reviewed on appeal. *Com. ex rel. Holly v. Ashe,* 368 Pa. 211, 82 A. 2d 244; *Com. v. Blose,* 160 Pa. Superior Ct. 165, 50 A. 2d 742.

Relying exclusively upon *Com. v. Wadley,* 169 Pa. Superior Ct. 490, 83 A. 2d 417, appellant contends that the conspiracy indictment which charged that appellant and Hauck conspired to "cheat and defraud" Armstrong was erroneously submitted to the jury in connection with the other indictment. In the *Wadley* case the defendant was tried and convicted upon an *ignored* bill of indictment along with other valid indictments, and we concluded that the invasion of defendant's constitutional rights constituted a harmful error which permeated the entire trial and invalidated the convictions upon the valid indictments. It does not apply where, as here, a defendant is tried upon several *true* bills of indictments.

The judgments and sentences are affirmed; the record is remitted to the court below; and it is ordered that appellant appear in the court below at such time as he may be there called and that he be by that court committed until he shall have complied with the sentences of the court, or any part thereof, which have not been performed at the time the appeals in this case were made a supersedeas.