Commonwealth *v.* Steinberg, Appellant.

Argued September 11, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, and VAN DER VOORT, JJ. (SPAETH, J., absent).

*Donald J. Goldberg*, for appellant.

*Deborah E. Glass*, Assistant District Attorney, with

her *Mark Sendrow* and *Steven H. Goldblatt*, Assistant District Attorneys, *Abraham J. Gafni*, Deputy District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., April 22, 1976:

Appellant herein, Frank M. Steinberg, was brought to trial[1] before a jury on seven indictments charging him with various counts of misbehavior in office, conspiracy and deposit of public money for gain. These charges arose out of Mr. Steinberg's activity as, first a member, and later Chairman, of the Philadelphia Housing Authority. In this appeal he challenges his conviction on four of the indictments[2] raising a number of issues most of which question the sufficiency of the evidence, and the propriety of his conviction on the common law offense of misbehavior in office. We will affirm the judgments.

The four indictments which are the subject of this

---

1. Initially the indictments against appellant were quashed by order of SPAETH, J., then of the Philadelphia Court of Common Pleas on July 27, 1970. On appeal by the Commonwealth, this Court, being equally divided, affirmed the order of the lower court. The Supreme Court in *Commonwealth v. McCloskey*, 443 Pa. 117, 277 A.2d 764, *cert. denied*, 404 U.S. 1000 (1971) reversed the orders of the lower court and the Superior Court in respect to this appellant, Frank Steinberg, reinstated the indictments, and remanded for further proceedings.

2. The charges against Mr. Steinberg were specified in seven indictments numbered 879 to 885. A demurrer to indictment number 884 was sustained following the Commonwealth's case upon the agreement of both the prosecution and defense that that charge was merely an alternative to number 883. The jury found appellant guilty of the remaining six indictments. However, the lower court en banc granted a motion for arrest of judgment on indictment 882, which charged deposit of public money for gain. The defendant's motion for arrest of judgment was also granted by the court en banc on indictment number 885 charging malfeasance, misfeasance and nonfeasance in office due to failure to record and disclose on the minutes of the Philadelphia Housing Authority the defendant's position and interest as a director and shareholder in Citizens Bank. None of these decisions was appealed.

appeal concern two separate series of incidents occurring after Frank Steinberg became a member of the Board of the Philadelphia Housing Authority on May 24, 1967. Three bills, number 879, 880 and 881, relate to appellant's alleged use of his office to obtain preferential treatment for his brother's construction firm. The remaining bill, number 883, concerns appellant's use of his influence to cause the deposit of Authority money in Citizens Bank.

## I. FACTUAL BACKGROUND

### A. FAVORITISM

Incident to proving the charges relating to favoritism of the firm of appellant's brother, Herman Steinberg, the Commonwealth established that when Frank Steinberg became a member of the Board of the Philadelphia Housing Authority, the major project in which the Authority was involved was the Used House Program. Under this program, developers, approved by the Authority, would locate houses in the City of Philadelphia suitable for the purposes of the Authority and restore them according to specified guidelines. In order to become an approved developer under the program, it was necessary for a prospective developer to make an application to the Authority. A questionnaire was filled out by the applicant which was circulated through the staff. The staff would determine the acceptability of the applicant and make its recommendation to the Board. The Board, relying on the advice of the staff, would then approve or disapprove the developer for work within the program.

When Mr. Steinberg became a member of the Board there were approximately 25 approved developers not all of which were active in the program. A much larger number of developers had applied for, but been denied, approval. One such applicant was Paul Cotler. Mr. Cotler had made at least two applications to the Authority prior

to the summer of 1967 but had always failed to obtain approval. Upon learning that appellant had become a member of the Board of the Authority, he determined to try again. A lunch was arranged to bring Mr. Steinberg and Mr. Cotler together, during which Mr. Cotler expressed his desires concerning the Redevelopment Authority. Appellant indicated that he might be of help in furthering Mr. Cotler's plans and suggested that Cotler talk to appellant's brother, Herman Steinberg, who also was interested in participating in the program. Cotler and Herman Steinberg then formed a company named Cotler Associates in which each had a one-half interest.

At a meeting of the Board on August 2, 1967, the matter of the appointment of new developers, a recurring theme at Board meetings, was raised. Appellant asked that Cotler Associates be appointed and produced the application of that company from his briefcase. The standard practice for handling applications by developers had been to attach a cover sheet to the questionnaire that the applicant had completed and circulate it to members of the staff who could properly evaluate it.[3] Notations of the results of each staff member's review would be recorded on the cover sheet. It would then be submitted to the Board for action based on the staff's recommendation.

When Cotler Associates's application was presented, no cover sheet was attached, indicating that it had not been circulated through the customary channels. The Director of Development, Mr. Emerson, who was present at the meeting, was asked for his comments on the proposed developer by Mr. Brown, the Authority Chairman at that time. Although he had not seen the application before, Emerson was familiar with Paul

---

3. These staff members included the Director of Development, the general counsel, the legal representative of the Authority, and the controller, who was familiar with financing.

Cotler due to his previous applications and he was able to comment on the individual, if not his company, after consulting his notes. His statements reflected the same criticism he had had of Cotler in the past: that the developer did not have much of a credit line to recommend him. Nevertheless Cotler Associates was approved as a developer by the Board on the basis of Mr. Steinberg's presentation. At no time was any mention made of appellant's brother, Herman Steinberg, and his association with the firm.

At the time Cotler Associates was approved as a developer in the Used House Program, each developer located its own properties to be rehabilitated on authority approval. This system was changed at the end of 1967, shortly after Frank Steinberg was elected Chairman,[4] in an effort by the Philadelphia Housing Authority to shift into a larger, more productive program. The Philadelphia Housing Development Corporation, a non-profit entity distinct from the Philadelphia Housing Authority, acquired properties suitable for rehabilitation which were turned over to the Authority. The Authority would then distribute them to the developers. When this method of property acquisition was instituted, the Director of Development and his staff recommended to the Board that the properties be distributed to the individual developer in proportion to the number of houses each had produced under the previous system.[5] After the meeting of the Board during which this suggestion was adopted, appellant spoke with the Director of Development in confidence, stating that

4. Frank Steinberg was elected Chairman of the Authority on December 18, 1967. He served until July, 1969, when he resigned.

5. With the large number of developers in the Used House Program and the relative scarcity of suitable properties available for rehabilitation, developers were, as it was stated by one witness, "clamoring for houses" to restore. This situation made the assignment of units obtained by the Philadelphia Housing Development Corporation a sensitive issue.

regardless how it was done he wanted his brother's firm to get the maximum allocation of properties. Cotler Associates had not completed a sufficient number of housing units under the previous system to allow it to be placed in the class receiving the highest allocation of building assignments, nor did its experience or proven capabilities in the program warrant such a placement.

In the spring of 1969 Cotler Associates was suspended from the program for doing inadequate wall work following an inspection by an engineering firm. Despite Cotler's failure to produce acceptable work, the firm continued to be assigned a substantial amount of repair and maintenance jobs within the program.[6] At no time did the Authority, or its Chairman, issue instructions that the suspended firm be denied further work within the program, although the fact that the firm had done a substandard job for the program was known.

## B. TRANSFER OF FUNDS TO CITIZENS BANK

The Commonwealth presented additional evidence to support its allegation that appellant had misused his position to benefit Citizens Bank in which he had an interest. It was shown that on May 9, 1968, Frank Steinberg was elected to the Board of Directors of Citizens Bank. He was at that time also the Chairman of the Board of the Philadelphia Housing Authority. On July 19, 1968, he became a shareholder in that bank with the purchase of 100 shares. He continued to purchase additional shares in the bank until May 14, 1969, when he began to sell his holdings. By May 22, 1969, he had divested himself of all his stock in Citizens Bank.

At a meeting of the Board of the Philadelphia Housing Authority on January 16, 1969, it was resolved

---

6. Cotler Associates did, in fact, receive the fourth largest share of repair work out of a field of 17 general contractors who were assigned repair work and many other contractors in specific trades.

that the Authority's lead bank[7] would be changed from Provident National Bank to Citizens Bank. Provident National Bank had been the Authority's lead bank for 28 years and no reason was ever advanced to explain the change. The minutes of the meeting during which the resolution was passed indicated that appellant refrained from voting on the proposal but they also revealed that he failed to mention his interest in the bank. In addition, one witness, the Controller of the Housing Authority, testified that on at least two occasions appellant asked him to invest large sums of Authority money in Citizens Bank. On one occasion the amount of the suggested investment was $2,000,000.

Following a review of these incidents by the April, 1969 Investigating Grand Jury, appellant was indicted and eventually tried in May, 1972. In defense to all the charges against him, appellant presented a series of character witnesses who all testified to his good reputation as a law abiding citizen. He was found guilty on six indictments, four of which are the subject of this appeal. Indictments numbered 879 and 880 charge malfeasance, misfeasance and nonfeasance in office for showing favoritism to Cotler Associates in the allocation of repair and maintenance work (Indictment No. 879) and in the allocation of properties to be rehabilitated (Indictment No. 880). Indictment No. 881 charges conspiracy to procure favored treatment for Cotler Associates between appellant, his brother, and Paul Cotler. The fourth bill, Indictment No. 883, charges malfeasance, misfeasance and nonfeasance in office in causing the deposit of Philadelphia Housing Authority funds in Citizens Bank. The appellant was sentenced to

---

7. The Housing Authority invests its money in banks throughout Philadelphia. However, a "lead bank" is required through which disbursements can be made to vendors and contractors and through which federal money can be cleared for payment and distribution to other banks.

pay a fine of $2,000.00 on each of bills 879, 880 and 883, and $500.00 on the conspiracy bill, 881, for a total fine of $6,500.00.

## II. SUFFICIENCY OF THE EVIDENCE

## A. FAVORITISM OF COTLER ASSOCIATES.

Appellant first attacks the sufficiency of the evidence to sustain his conviction on any of the above indictments. The legal principle is well established that when the sufficiency of the evidence to support a conviction is attacked, the evidence as it was presented at trial, and all reasonable inferences drawn therefrom, must be read in the light most favorable to the verdict winner, in this case the Commonwealth, and all evidence which, if believed, would support the jury's verdict must be accepted as true. *Commonwealth v. Blatstein*, 231 Pa. Superior Ct. 306, 332 A.2d 510 (1974). With this principle in mind, we will consider the charges against appellant of malfeasance, misfeasance and nonfeasance in office, and conspiracy together with the evidence that supports them, relating, first, to the favoritism of Cotler Associates and, second, to the deposit of funds in Citizens Bank.

The offense of malfeasance, misfeasance or non-feasance in office, more commonly called misbehavior in office, is a common law misdemeanor. *Commonwealth v. Evans*, 190 Pa. Superior Ct. 179, 154 A.2d 57 (1959), *aff'd mem.*, 399 Pa. 387, 160 A.2d 407, *cert. denied*, 364 U.S. 899 (1960); *Commonwealth v. Mecleary*, 147 Pa. Superior Ct. 9, 23 A.2d 224 (1941). The offense has been carefully defined by the courts of this Commonwealth and by legal scholars. 1 N. Kessler, The Law of Criminal Procedure in Pennsylvania 177 (1961); 2 *id.* 504; R. Perkins, Criminal Law 482-90 (2d ed. 1969). It has been reiterated that "[t]he offense occurs when there is a breach of a positive statutory duty or the performance by a public official of a discretionary act with an improper or corrupt motive.

Com. v. Peoples, 345 Pa. 576, 579, 28 A.2d 792 [(1942)]; McNair's Petition, 324 Pa. 48, 55, 187 A. 498 [(1936)]." *Commonwealth v. Evans*, supra at 225, 154 A.2d at 82. Where the performance of a discretionary duty with an improper or corrupt motive is the issue, the courts have clarified the concepts and defined the terms as follows: "A discretionary duty must be exercised with reason as opposed to caprice or arbitrary action; the term discretion ' "imports the exercise of judgment, wisdom, and skill, as contradistinguished from unthinking folly, heady violence, and rash injustice." ' Commonwealth v. Brownmiller, .... 141 Pa. Superior Ct. 107, 120, 14 A.2d 907, 913 [(1940)]. In its penal sense misbehavior in office does not encompass mere errors in judgment or departures from sound discretion, but an official must perform those official duties which require the exercise of a sound discretion to the interest of the Commonwealth and not capriciously, arbitrarily, and with a willful and corrupt design. Com. v. Brownmiller, supra .... The willful and corrupt motive need not arise from personal benefit." *Commonwealth v. Evans*, supra at 225-26, 154 A.2d at 82 (1959). *Accord, Commonwealth v. Schwartz*, 210 Pa. Superior Ct. 360, 233 A.2d 904 (1967), *aff'd mem.*, 432 Pa. 522, 248 A.2d 506 (1968) (divided court), *cert. denied*, 398 U.S. 957 (1970).[8] It is not contended on this appeal that the appellant breached any statutory duty in engaging in the conduct here involved. Therefore, the Commonwealth's evidence must be sufficient to support the conclusion that appellant performed the discretionary

---

8. *Compare Commonwealth v. Brown*, 116 Pa. Superior Ct. 1, 175 A. 748, *allocatur refused*, 116 Pa. Superior Ct. *xxv* (1934), where misbehavior in office was found when public officials willfully breached their statutory duty, *with Commonwealth v. Peoples*, 345 Pa. 576, 28 A.2d 792 (1942) *and Commonwealth v. Bready*, 220 Pa. Superior Ct. 157, 286 A.2d 654, *allocatur refused*, 220 Pa. Superior Ct. *xxxvii* (1971) where the common law offense is distinguished from statutory offenses.

duties for which he was responsible in a willfully improper and corrupt manner. "In order to sustain this conviction, the Commonwealth had the duty to prove the act complained of *and* that the defendant acted from a corrupt motive." *Commonwealth v. McSorley*, 189 Pa. Superior Ct. 223, 228, 150 A.2d 570, 573 (1959).

In regard to the two indictments, Nos. 879 and 880, charging appellant with granting preferential treatment to Cotler Associates in the allocation of repair work and rehabilitation jobs, the Commonwealth showed that Frank Steinberg used his position on the Board of the Housing Authority to obtain work for the newly formed company. To this end, he bypassed the normal channels for approval of developers, introducing the application of Cotler Associates and urging its approval without the benefit of the protective screening procedures. Once having obtained for his brother a place in the Authority's development program, appellant blatantly demanded, from his position of Chairman of the Board, that the Director of Development, a staff member, make sure appellant's brother was granted the maximum allocation of properties to rehabilitate. After Cotler Associates was suspended as a developer in the program due to inadequate construction of walls, no effort was made by the Board, or appellant as its Chairman, to exclude the firm from further assignments, and as a result it was continually assigned repair jobs.

These facts evidence that a particular firm was selected for significant support and assistance. However, it is not necessary to evaluate appellant's conduct in terms of its wisdom or practicality. A showing of poor judgment or even lack of care in handling the Authority's affairs is neither necessary nor sufficient to make out the common law offense of misbehavior in office. The element which distinguishes the negligent mishandling of the public's business from unlawful conduct by a public officer in handling a discretionary matter is the existence of a corrupt motive. *Com-*

monwealth v. Hubbs, 137 Pa. Superior Ct. 244, 8 A.2d 618 (1939). When an individual has been placed in a position of public trust and taken on the responsibility of acting for the people, the intentional choice not to act in the public interest but to advance his own or some other private purpose, disregarding the good of the many, can be evidence of corrupt motive. "If this motive ... was to obtain gain for himself or his political party, or to bestow a gratuity upon a relative or a friend or a political ally at the expense of the Commonwealth, his motive would be corrupt and he would be guilty of the offense charged. The Commonwealth need not present detailed testimony to establish the motive, but evidence must be produced which discloses facts from which a corrupt motive can be inferred.

"Criminal intent may be inferred by the jury from facts and circumstances which are of such a nature as to prove defendant's guilt beyond a reaonable doubt. *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 [(1954)]; *Commonwealth v. Homeyer*, 373 Pa. 150, 94 A.2d 743 [(1953)]." *Commonwealth v. McSorley*, supra at 229, 150 A.2d at 573.

That the appellant's motive was to benefit his brother is abundantly evident from the testimony. A jury would be justified in drawing the conclusion from Paul Cotler's testimony that when Cotler approached appellant for assistance in his ambition to become an approved developer, Frank Steinberg conditioned his support on Cotler's "getting together" with Herman Steinberg. This having been accomplished, and a company formed, appellant obtained Authority approval of the new developer and specifically required that his brother's firm receive privileged status.

Appellant maintains that because he derived no personal benefit from his activity on behalf of Cotler Associates his motives cannot be questioned.[9] However, a

---

9. Appellant also asserts that there was no evidence that the City

showing of direct financial gain to one accused of misbehavior in office is not required to uphold the jury's verdict. Obtaining a benefit for a relative, *Commonwealth v. Evans*, supra; *Commonwealth v. McSorley*, supra; an indirect personal benefit, *Commonwealth v. Schwartz*, supra; or political advantage or influence, *Commonwealth v. Brownmiller*, 141 Pa. Superior Ct. 107, 14 A.2d 907, *allocatur refused*, 141 Pa. Superior Ct. *xxxiii* (1940), have all been recognized to demonstrate a corrupt motive, as has a showing of favoritism in enforcing the law at the suggestion of influential people when the officer is obliged to act impartially. *Commonwealth v. Miller*, 94 Pa. Superior Ct. 499 (1928). A public officer could well be motivated by such factors to overlook his duty to the city in favor of advancing some individual concern, even though no immediate or personal monetary gain is foreseen. In the present case, the appellant's use of his official influence to benefit a family member when his duty was to advance the city's best interests was corrupt.[10]

---

of Philadelphia suffered any loss due to appellant's conduct. Without this proof, he argues, appellant's conduct cannot be judged improper. Even if it were conceded that there was no loss to the city, this argument would have no merit. The offense of misbehavior in office is complete when a discretionary act is performed with an improper or corrupt motive. *Commonwealth v. Schwartz*, 210 Pa. Superior Ct. 360, 233 A.2d 904 (1967), *aff'd mem.*, 432 Pa. 522, 248 A.2d 506 (1968) (divided court), *cert. denied*, 398 U.S. 957 (1970). The Commonwealth does not need to prove that a loss in fact resulted to the city because loss is not an element of the offense. It is only necessary to show that an officer subordinated the interests of the public he was appointed to serve to some other interest for an improper purpose. Bad faith is the essence of the offense. *See, Commonwealth v. Blatstein*, 231 Pa. Superior Ct. 306, 332 A.2d 510 (1974) (showing defendant actually delayed construction of a stadium is not required; need only show that he attempted to delay it for improper motives). *Cf. McNair's Petition*, 324 Pa. 48, 187 A. 498 (1936) (errors in judgment, even though resulting in misapplication of the law and consequent harm to the public, do not make out the offense of misbehavior in office unless bad faith appears).

10. In *Commonwealth v. Evans*, 190 Pa. Superior Ct. 179, 154

The jury could properly find that appellant was acting with a corrupt motive in obtaining for his brother both the allocation of properties to be rehabilitated, as charged in Indictment No. 880, and the allocation of repair and maintenance work, as charged in Indictment No. 879. His efforts on behalf of his brother in his use of the opportunity presented by Paul Cotler's ambitions and his use of his office to obtain approval for the application served to place the favored firm in a position to receive the advantages of rehabilitation and repair and maintenance work available through the Housing Authority. Once in the position, maximum advantages were assured by Frank Steinberg's continued efforts. A jury finding of a corrupt motive on the part of the appellant to aid his relative in receiving work under both programs of the Authority is supported by ample evidence.

To further discredit the Commonwealth's evidence, appellant contends that he is shielded by two presumptions which must be overcome before he can be convicted for any of his activity while in public office. The first is the presumption of innocence to which no one would deny a defendant is entitled. In addition, appellant claims a second presumption exists which applies only to public

A.2d 57 (1959), *aff'd mem.*, 399 Pa. 387, 160 A.2d 407, *cert. denied*, 364 U.S. 899 (1960), this Court held that the offense of misbehavior in office was made out when the defendant Evans used his position as Chairman of the Turnpike Commission to promote a contract between the Commission and a company in which he had an interest. A number of aspects of the defendant's conduct, similar to the appellant's conduct in the present case, were stressed: despite defendant's knowledge and experience with the Commission, normal protective procedures for evaluating prospective contractors were ignored; the Chairman urged the acceptance of the contract; and the parties to be benefited by the awarding of the contract were Evan's relatives. The Court concluded "that they favored Manu-Mine in this contract ... without regard to their official obligation to the commission. This was willful and corrupt." *Id.* at 226, 154 A.2d at 82.

officials. It is his contention that a public official must be presumed to have acted in accordance with the law, in good faith and with a proper motive, in the public interest. In support of this position appellant relies on *Commonwealth v. McSorley*, supra, which sets forth the presumption that " '... honesty of purpose and good faith in the performance of acts in their official capacity will be assumed by the courts on the part of persons holding responsible public positions ....' " *Id.* at 233, 150 A.2d at 575, *quoting Hill v. Alexander*, 338 Pa. 26, 32, 11 A.2d 884, 886 (1940).[11] The Court then states: "This presumption shifts if, and only if, the Commonwealth proves both elements of the crime here involved. The presumptions here involved, strongly imbedded in our law, cannot be overcome by vague references to inferences to be drawn from circumstances proved. The former is positive and the latter is negative in the sense that one must supply that which is found to be lacking." *Commonwealth v. McSorley*, supra at 233, 150 A.2d at 575.

From this statement, the appellant would have us conclude that where public officials are defending criminal charges related to their conduct in office, they are presumed to have conducted themselves in good faith for the public interest, which presumption cannot be overcome merely by inferences capable of being drawn to the contrary. Such an interpretation, which would grant to public officers an additional criminal protection not shared by the common defendant, would put the fact

---

11. To define the presumption the Court in *Commonwealth v. McSorley*, 189 Pa. Superior Ct. 223, 150 A.2d 570 (1959) cites three civil cases: *Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892 (1952) (a libel case); *Hill v. Alexander*, 338 Pa. 26, 11 A.2d 884 (1940) (a case involving dismissal of a public employee); and *Barnes and Armbruster v. Scranton Poor Dist.*, 105 Pa. Superior Ct. 149, 160 A. 241 (1932) (an equity case to enjoin awarding a contract). Our research reveals no criminal case, with the exception of *McSorley*, where this presumption was applied. *But see Commonwealth v. Nichols*, 206 Pa. Superior Ct. 352, 213 A.2d 105, *allocatur refused*, 207 Pa. Superior Ct. *l* (1965).

finder in the quandary of evaluating evidence in the midst of a conflict between the opposing forces of a presumption on one hand and permissible inferences on the other.[12] If an analysis of a presumption and an inference and the consequences of their opposition is attempted, it becomes apparent that the crime of misbehavior in office would be virtually impossible to prove. A presumption "is a means by which a rule of substantive law is invoked to force the trier of fact to reach a given conclusion, once the facts constituting its hypothesis are established, absent contrary evidence. See 9 Wigmore, Evidence, §2491 (3rd ed. 1940). An inference is no more than a logical tool enabling the trier of fact to proceed from one fact to another, if the trier believes that the weight of the evidence and the experiential accuracy of the inference warrant so doing." *Commonwealth v. Shaffer*, 447 Pa. 91, 105-06, 288 A.2d 727, 735, *cert. denied*, 409 U.S. 867 (1972). Drawing an inference, on the basis of the conduct of a public official, that he was using his office for private gain instead of acting in the public interest would appear to be impossible where it is already presumed that those very acts are performed in the public interest.

We cannot, therefore, accept appellant's interpretation of *Commonwealth v. McSorley*, supra. We conclude that the presumptions discussed therein do not, in effect, produce any greater protection for the public official facing criminal charges than the presumption of in-

---

12. This conflict is illustrated in Judge WOODSIDE'S concurring and dissenting opinion to *Commonwealth v. Evans*, 190 Pa. Superior Ct. 179, 154 A.2d 57 (1959), *aff'd mem.*, 399 Pa. 387, 160 A.2d 407, *cert. denied*, 364 U.S. 899 (1960), in which it is stated "[a]n official act of a public official is presumed to have been performed in accordance with the law and in good faith and with the proper motive. [Citations omitted.] How can an act itself presumed to have been done in good faith, be the basis of an inference that it was done with corrupt motive?" *Id.* at 274, 154 A.2d at 105.

nocence common to all defendants. The Court in *McSorley* goes on to say: "In passing on the inferences relied on by the Commonwealth, we must point out that the inferences drawn by it could be equally drawn in favor of the defendant. In *Commonwealth v. New*, 354 Pa. 188, 221, 47 A.2d 450 [(1946)] the following pointed observation was made by the Supreme Court: 'When two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt ....' " *Commonwealth v. McSorley*, supra at 233, 150 A.2d at 575. It is apparent from this discussion that the Court merely intended to accentuate the rule that a criminal conviction cannot be based on inferences that could with equal logic be drawn to support acquittal. *See United States v. Anzelmo*, 319 F. Supp. 1106 (E.D. La. 1970).

## B. CONSPIRACY

Appellant also contends that the evidence was not sufficient to prove the conspiracy charged in Indictment No. 881. Appellant was accused of conspiring with his brother, Herman Steinberg, and Paul Cotler to procure favored treatment for Cotler Associates to the prejudice of the Philadelphia Housing Authority. The Penal Code, which was in effect when appellant's alleged unlawful conduct took place, proscribes conspiracy to do an unlawful act as follows: "Any two or more persons who falsely and maliciously conspire and agree to cheat and defraud any person of his moneys, goods, chattels, or other property, or do any other dishonest, malicious, or unlawful act to the prejudice of another, are guilty of conspiracy, a misdemeanor ...." Act of June 24, 1939, P.L. 872, §302, 18 P.S. §4302, *repealed*, Act of December 6, 1972, P.L. 1482, No. 334, §5.

The heart of the offense of conspiracy is the common understanding, no matter how it comes into being, that the participants are joined together to perpetrate an

unlawful act, or a lawful act in an unlawful manner. Because direct evidence of the existence of an express agreement can seldom be established, the unlawful combination can be inferred from the conduct or circumstances of the parties. "Otherwise stated, where the conduct of the parties indicates that they were acting together with a common and corrupt purpose in view, the jury may properly infer that a conspiracy did exist." *Commonwealth v. Schwartz*, 210 Pa. Superior Ct. 360, 381, 233 A.2d 904, 914 (1967), *aff'd mem.*, 432 Pa. 522, 248 A.2d 506 (1968) (divided court), *cert. denied*, 398 U.S. 957 (1970).

We conclude that the jury was justified in inferring from the evidence presented at trial that the named individuals did conspire to prefer Cotler Associates above the best interests of the Housing Authority. Appellant's initial conversation with Cotler suggested the basis for the combination: Cotler was to join forces with appellant's brother before resubmitting his application. When this arrangement was accomplished, appellant obtained and cooperatively advanced the application directly into the Board meeting, thus avoiding the perils of the initial screening procedures and backing it with his own strong support. Considering the similarity of purpose, the close relationship existing between the appellant, his brother, and the brother's partner, as well as the evidence of cooperation, it is impossible to imagine that there was no understanding between the three that appellant was expected to and did improperly use his office to benefit the firm and would continue to do so in the future. That no monetary loss was specifically shown to accrue to the Authority does not detract from this finding. It is true that section 302 of the Penal Code provides that the agreement to engage in unlawful activity be to the prejudice of another; however the fact that the Authority was deprived of the impartial advice and guidance it had a right to expect from its member and Chairman is prejudice enough. *Commonwealth v. Hall*, 173 Pa. Superior Ct. 285, 98 A.2d 386 (1953).

## C. DEPOSIT OF FUNDS

Appellant finally challenges the sufficiency of the evidence to convict him on the charge of misbehavior in office for causing the deposit of Housing Authority funds in Citizens Bank. Once again we must examine the facts of record to determine if the appellant performed a discretionary act in his official capacity with an improper or corrupt motive.[13] We conclude that the evidence is sufficient to support the jury's finding. Appellant was on the Board of Directors of Citizens Bank at the same time he was Chairman of the Board of the Philadelphia Housing Authority. He was also a shareholder in the bank and continued to purchase more shares over the period of time with which this appeal is primarily concerned. While he occupied all these positions, the Authority changed its lead bank from Provident National to Citizens. There was no reason to change the Authority's lead bank of 28 years and no explanation for this decision could be advanced by any witness. Neither was the Chairman of the Board's substantial interest in Citizens Bank revealed. These facts give rise to the inference that appellant, while in a delicate position fraught with conflict of interest, chose to adopt a course of action on behalf of the Authority which worked to his own benefit by bringing new business to his bank without advancing any purpose for the Authority. That his motive was to benefit Citizens Bank,

---

13. Although appellant was also charged in Indictment Nos. 882 and 885 with having breached a positive statutory duty, the other prong of the offense of misbehavior in office, *Commonwealth v. Evans*, 190 Pa. Superior Ct. 179, 154 A.2d 57 (1959), *aff'd mem.*, 399 Pa. 387, 160 A.2d 407, *cert. denied*, 364 U.S. 899 (1960), judgment on these charges was arrested by the lower court en banc. *See* note 2, supra. Therefore, only proof that appellant performed a discretionary duty with an improper motive will uphold his conviction. *Commonwealth v. Hubbs*, 137 Pa. Superior Ct. 244, 8 A.2d 618 (1939).

regardless of the usual policy and the interests of the Authority, is further substantiated by the testimony of the Authority Controller. The Controller testified that Frank Steinberg had pressed him to deposit large amounts of Authority funds in Citizens Bank. These facts could lead a jury to conclude beyond a reasonable doubt that appellant was using his office to advance his own interest and augment his own power and control by reinforcing the position of Citizens Bank, and that this activity was not related to the welfare of the Housing Authority. Such a conclusion would adequately support a finding of a willful and corrupt motive. *Commonwealth v. Evans*, 190 Pa. Superior Ct. 179, 154 A.2d 57 (1959), *aff'd mem.*, 399 Pa. 387, 160 A.2d 407, *cert. denied*, 364 U.S. 899 (1960); *Commonwealth v. Brownmiller*, 141 Pa. Superior Ct. 107, 14 A.2d 907, *allocatur refused*, 141 Pa. Superior Ct. *xxxiii* (1940).

## III. COMMON LAW OFFENSE

Appellant attacks the common law offense of which he was convicted for being too vague and imprecise to give an individual adequate notice of the behavior proscribed as criminal. Common law offenses have evolved over the long history of the law to control conduct, not already proscribed by statute, thought to "injuriously affect public morality, or obstruct, or pervert public justice, or the administration of government." *Commonwealth v. Miller*, 94 Pa. Superior Ct. 499, 507 (1928). The Penal Code, which was in effect at the time of the incidents at issue herein, specifically preserved common law crimes as punishable offenses.[14]

---

14. Act of June 24, 1939, P.L. 872, §1101, 18 P.S. §5101, *repealed*, Act of December 6, 1972, P.L. 1482, No. 334, §5. This section provides: "Every offense now punishable either by the statute or common law of this Commonwealth and not specifically provided for by this act, shall continue to be an offense punishable as heretofore." The new Crimes

In *Commonwealth v. McHale*, 97 Pa. 397, 408 (1881), the Supreme Court quotes Blackstone on the subject of offenses " 'against the public police or economy. By the public police and economy I mean the due regulation and domestic order of the kingdom, whereby the individuals of the state, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood and good manners, and to be decent, industrious and inoffensive in their respective stations.' " The Court went on to say, "We are of opinion that all such crimes as especially affect public society are indictable at common law. The test is not whether precedents can be found in the books, but whether they injuriously affect the public police and economy." *Id.* at 410. These basic principles have been reiterated as authority for finding common law crimes in conduct ranging from procuring false election returns to obscene telephone calls. *See, e.g., Commonwealth v. McKarski*, 208 Pa. Superior Ct. 376, 222 A.2d 411 (1966); *Commonwealth v. Evans*, 190 Pa. Superior Ct. 179, 154 A.2d 57 (1959), *aff'd mem.*, 399 Pa. 387, 160 A.2d 407, *cert. denied*, 364 U.S. 899 (1960); *Commonwealth v. Mochan*, 177 Pa. Superior Ct. 454, 110 A.2d 788 (1955); *Commonwealth v. Orris*, 136 Pa. Superior Ct. 137, 7 A.2d 88 (1939).

We might be inclined to agree with appellant that this language is indeed broad and if the courts actually failed to rely on precedent there would be little notice to an individual what conduct was proscribed as affecting the public peace, morals and economy. However, it happens that the particular common law offense with which the appellant herein is charged, misbehavior in

---

Code abolished common law crimes: "No conduct constitutes a crime unless it is a crime under this title or another statute of this Commonwealth." Act of December 6, 1972, P.L. 1482, No. 334, §1, 18 Pa.C.S. §107(b). *See* Model Penal Code §1.05, Comment (Tent. Draft No. 4, 1955).

office, has a great deal of precedent to support it. The conduct proscribed is carefully set out and delimited in specific terms in numerous cases. *See, e.g., Commonwealth v. Peoples*, 345 Pa. 576, 28 A.2d 792 (1942); *Commonwealth v. Schwartz*, 210 Pa. Superior Ct. 360, 233 A.2d 904 (1967), *aff'd mem.*, 432 Pa. 522, 248 A.2d 506 (1968) (divided court), *cert. denied*, 398 U.S. 957 (1970); *Commonwealth v. Evans*, supra; *Commonwealth v. Brownmiller*, 141 Pa. Superior Ct. 107, 14 A.2d 907, *allocatur refused*, 141 Pa. Superior Ct. *xxxiii* (1940). This Court and any individual who wishes to inform himself may be guided by examples of conduct which were found in the past to demonstrate misuse of a public office for private benefit with corrupt motive, as well as conduct which was found to be innocent of such motive. *Commonwealth v. Blatstein*, 231 Pa. Superior Ct. 306, 332 A.2d 510 (1974); *Commonwealth v. McSorley*, 189 Pa. Superior Ct. 223, 150 A.2d 570 (1959). If the fact that the improper and corrupt utilization of the office, entrusted to him by the public, to obtain gain for himself and his relatives is criminal comes as a surprise to Mr. Steinberg, it is not due to lack of clarity or precision in the law.

## IV. CONSIDERATION BY JURY

Appellant was found guilty by a jury on six indictments. On two of these, Indictment Nos. 882 and 885, both dealing with the Citizens Bank incidents, the court en banc arrested judgment. Indictment No. 882 charged appellant with a violation of the Act of June 24, 1939, P.L. 872, §680, 18 P.S. §4680, *repealed*, Act of December 6, 1972, P.L. 1482, No. 334, §5, deposit of public money for gain. The court en banc found that there was no evidence of an agreement between the appellant and the bank as required by the statute, and therefore that a conviction on that charge could not stand. On Indictment No. 885, which charged misconduct in office due to a violation of the Housing Authorities Law, Act of May 28, 1937, P.L. 955, §8, *as amended*, 35

P.S. §1548, concerning employees' undisclosed interest in connection with housing projects, the court en banc arrested judgment concluding that a checking account held by the Authority in the bank did not represent a "contract for material or services to be furnished or used in connection with any housing project" within the meaning of the statute.[15] These decisions cast doubt on Indictment No. 883 which charged appellant, also in connection with his activity in regard to Citizens Bank, with misbehavior in office for breach of statutory duties (deposit of public money for gain[16] and the Housing Authorities Law[17]) or, in the alternative, for performance of discretionary acts with an improper and corrupt motive. The court en banc allowed this conviction to stand, in spite of its finding that no statutory violation was made out, because the alternative charge remained good. Appellant now argues that it was prejudicial to submit to the jury the two bills on which judgment was later arrested, contending that knowledge of statutory violations charged to a defendant would sway a jury to find he had acted with a corrupt intent on another charge.

Where it is contended by an appellant that the erroneous submission of charges to a jury prejudiced the fact finders' consideration of properly submitted charges, this court has devised a pragmatic test to determine whether the error was harmless. In *Commonwealth v. Wadley*, 169 Pa. Superior Ct. 490, 495, 83 A.2d 417, 419 (1951) the issue was posed: "What effect did the error have upon the jury?" In response, a passage from *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946) was quoted: " 'If, when all is said and done, the

---

15. The Commonwealth has not appealed either of these decisions.

16. Act of June 24, 1939, P.L. 872, §680, 18 P.S. §4680, *repealed*, Act of December 6, 1972, P.L. 1482, No. 334, §5.

17. Act of May 28, 1937, P.L. 955, §8, *as amended*, 35 P.S. §1548.

conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress.... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase effected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.' " *Commonwealth v. Wadley*, supra at 195, 83 A.2d at 419 (emphasis deleted).

*Commonwealth v. Wadley*, supra, and its progeny[18] concern an error of constitutional dimensions: the defendants in those cases were tried and convicted of crimes with which they were never indicted, in combination with other valid indictments. The Court in *Wadley* held that such an error had a grossly prejudicial impact on the jury making a fair trial on the other charges, presented in combination with the illegal charge, impossible. The opinions in these cases were concerned with a defendant's constitutional right to a grand jury indictment. The error, therefore, represents "departure from a constitution norm" under the exception stated in the test as quoted above, and could never be said to result in harmless error. In the present case, however, appellant was tried upon a number of charges for which true bills of indictment were returned. The fact that judgment was subsequently arrested on two of the six

---

18. *Commonwealth v. Hoffman*, 230 Pa. Superior Ct. 444, 331 A.2d 805 (1974); *Commonwealth v. Charen*, 177 Pa. Superior Ct. 522, 111 A.2d 155 (1955); *Commonwealth v. Graham*, 170 Pa. Superior Ct. 343, 85 A.2d 632 (1952).

charges does not impair the appellant's constitutional right to be tried only on those offenses for which he is legally charged. It is therefore apparent that the analysis in *Commonwealth v. Wadley*, supra, is not applicable here. *Commonwealth v. Rosenblatt*, 180 Pa. Superior Ct. 28, 117 A.2d 774 (1955), *allocatur refused*, 180 Pa. Superior Ct. *xxix* (1956); *Commonwealth v. Miller*, 172 Pa. Superior Ct. 82, 92 A.2d 249, *allocatur refused*, 172 Pa. Superior Ct. *xxiv* (1952); *Commonwealth v. Kimmel*, 172 Pa. Superior Ct. 76, 92 A.2d 247, *allocatur refused*, 172 Pa. Superior Ct. *xxiv* (1952).

In the present case judgment was arrested on two statutory violations not because the Commonwealth failed to prove the appellant acted improperly with respect to the Housing Authority, but because the court en banc did not find that an agreement existed between the appellant and his bank in one instance, and that a checking account did not constitute a contract for services in the other. These distinctions are fairly technical and depend upon a close reading and interpretation of the statutes in question. They do not weigh upon appellant's constitutional rights. That the jury was permitted to form a conclusion that appellant was guilty of these charges was not an error which was likely to significantly influence the jury to find a corrupt motive behind appellant's actions in the absence of other convincing evidence. Nor is this a case where a quantity of evidence in support of numerous unjustified charges confuses and overwhelms a jury so that its verdict on a few remaining valid charges is suspect, as in *Commonwealth v. Nichols*, 206 Pa. Superior Ct. 352, 213 A.2d 105, *allocatur refused*, 207 Pa. Superior Ct. *l* (1965). Although the evidence here may not have made out every fine element of the specific statutory offenses, it was all relevant to prove the offense of misbehavior in office and supported a finding that the actions of this public official were motivated by improper purposes.

Appellant also attacks the remaining charge concern-

ing his relations with Citizens Bank. This Indictment, No. 883, charged misbehavior in office in the general language of the offense. The trial judge and counsel below all understood this to mean that if the appellant was found either (A) to have breached his statutory duty by (1) depositing public money for gain and/or (2) acquiring an interest in conflict with that of the Authority, *or* (B) to have performed discretionary activity with an improper motive in connection with the bank, he would be found guilty on this charge. Because at least one other indictment[19] charged appellant with one of the statutory violations which could form a basis for conviction on this indictment, it is possible that the jury, finding appellant guilty of the statutory violation, could return a verdict of guilty on Indictment No. 883 on the basis of the same conduct. It is not necessary to decide whether conviction on both indictments was duplicative, however, because judgment was arrested on both indictments charging statutory offenses. That decision was not appealed[20] and appellant now stands before us convicted only of misconduct in office.

Appellant now argues that because there are three theories in the single indictment upon which the jury

---

19. The only charge that was really duplicated in Indictment No. 883 was that of deposit of public money for gain (18 P.S. §4680). That crime was specifically charged in Indictment No. 882 and also represented one of the statutory violations which could support a finding of misconduct in office in No. 883. Indictment No. 885 charged a violation of the Housing Authorities Law which carried its own penalty. Act of May 28, 1937, P.L. 955, §8, *as amended*, 35 P.S. §1548. When the trial judge instructed the jury on No. 883, however, he made clear that the appellant could be found guilty of misconduct in office due to the violation of another section of the Housing Authorities Law which did not carry its own penalty and was distinct from that portion charged in No. 885.

20. Because no appeal was taken from this decision, we will not consider whether the lower court en banc acted correctly in arresting judgment on these charges.

could have based its verdict, and because two of them have been determined to be insufficiently supported by the evidence, it is uncertain whether or not the basis for his conviction was the one valid charge remaining. Where it is impossible to determine whether the jury based its general verdict on sufficient or insufficient counts in a single indictment, the case must be remanded for a new trial. *Cramer v. United States*, 325 U.S. 1 (1945); *Commonwealth v. Field*, 223 Pa. Superior Ct. 258, 298 A.2d 908, *allocatur refused*, 223 Pa. Superior Ct. *xxxvi* (1972). We find that such a result is not warranted in the present case, however. Here, the trial court instructed the jury that Indictment No. 883 was comprised of three parts: two statutory violations and one corrupt use of discretion. Although this indictment had been the subject of much discussion earlier in the case and its ambiguities fully explored, appellant did not submit a point for charge concerning this instruction or object to the charge as the judge gave it. In fact, the record does not reveal that appellant submitted any points for charge or made any objections to the charge at all. If the appellant wished the jury to differentiate between the statutory offenses and the common law offense, this would have been the time to do something about it. Having failed to direct the court's attention to this possible source of confusion, appellant cannot now argue that the basis for the jury's verdict is unclear. *Commonwealth v. Mitchell*, 464 Pa. 117, 346 A.2d 48 (1975); *Commonwealth v. McNeil*, 461 Pa. 709, 337 A.2d 840 (1975).

Finally, we would be remiss if we did not note the excellence of the briefs submitted in this case. It has particularly been our pleasure to consider the clear and perceptive arguments advanced by the attorney for the Commonwealth in the present case.

Judgment affirmed.

HOFFMAN and SPAETH, JJ., did not participate in the consideration or decision of this case.